UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 10-cv-01592-REB

REMIGIO A. DURAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3][1] filed July 6, 2010, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a chronic low back pain associated with degenerative disc disease and multiple surgeries, as well as by depression. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. Two

---

[1] "[#3]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

hearings were held, one on March 21, 2008, the other on August 8, 2008. At the time of these hearings, plaintiff was 32 years old. He has an eleventh grade education and past relevant work experience as a cashier, concrete laborer, iron worker, and woodshop worker. He has not engaged in substantial gainful activity since August 3, 2005, his alleged date of onset. His eligibility for benefits expired on September 30, 2007.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe physical impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Plaintiff's alleged mental impairment was found to be not severe. The ALJ found that plaintiff had the residual functional capacity to perform light work with certain postural and mental limitations. Although this finding precluded plaintiff's past relevant work, the ALJ found that there were other jobs existing in significant numbers in the national and local economies that he could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See **Kelley v. Chater**,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).[2] ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[2] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred by (1) concluding that his spinal impairments were not presumptively disabling under section 1.04 of the Listings; (2) discrediting the opinion of his treating doctor; (3) failing to delve more deeply into the vocational expert's opinion regarding the alternative jobs identified as within plaintiff's residual functional capacity; and (4) discounting plaintiff's subjective complaints of pain and functional limitation. Finding no reversible error, however, I affirm.

The Commissioner's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Aug. 2, 2010), sets forth medical criteria pursuant to which impairments of various bodily systems will be considered presumptively disabling. 20 C.F.R. § 404.1520(d). *See Sullivan v. Zebley*, 493 U.S. 521, 532, 534-35, 110 S.Ct. 885, 893, 107 L.Ed.2d 967 (1990). Section 1.00 addresses disorders of the musculoskeletal system, and section 1.04 thereunder deals specifically with disorders of the spine and provides that such disorders are presumptively disabling when the following criteria are met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

> reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. An impairment is not presumptively disabling unless it satisfies all the criteria of at least one of these subsections. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." ***Sullivan***, 110 S.Ct. at 891 (footnote omitted).

Although plaintiff suffers from degenerative disc disease, it is clear that he does not meet all the criteria of any of the subsections of section 1.04. An MRI performed shortly after plaintiff's alleged date of onset showed no nerve compression. In the absence of such evidence, the fact that plaintiff exhibited positive straight-leg raising on various occasions (***see, e.g.*** Tr. 315, 338, 344) is insufficient to meet the requirements of section 1.04(A). Arachnoiditis[3] is mentioned just twice in the record as a possible

---

[3] Arachnoiditis is defined as

> a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. The arachnoid can become inflamed because of an irritation from chemicals, infection from bacteria or viruses, as the result of direct injury to the

6

source of plaintiff's complaints (Tr. 289, 305), but that suggested diagnosis was never "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging" as required by section 1.04(B). As for the subsection C criteria, the Commissioner has clarified that an "inability to ambulate effectively" requires that the claimant have "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 1.00(B)(2)(b)(1). Although plaintiff was advised to get a walking stick soon after his January, 2008, surgery (Tr. 373),[4] and brought a cane with him to at least one doctor's appointment (Tr. 371) and to the hearing (*see* Tr. 30-31), he does not argue, and nothing in the record suggests, that this device limited the functioning of both his upper extremities. I thus find no reversible error in the ALJ's step 3 determination that plaintiff's physical impairments did not meet the Listings.

Plaintiff further complains of the ALJ's admittedly erroneous suggestion that he questioned the vocational expert at the hearing regarding any conflicts between the expert's testimony and the *Dictionary of Occupational Titles* ("*DOT*"). (*See* Tr. 25.)

---

>> spine, chronic compression of spinal nerves, or complications from spinal surgery or other invasive spinal procedures. Inflammation can sometimes lead to the formation of scar tissue and adhesions, which cause the spinal nerves to "stick" together. If arachnoiditis begins to interfere with the function of one or more of these nerves, it can cause a number of symptoms, including numbness, tingling, and a characteristic stinging and burning pain in the lower back or legs.

National Institute of Neurological Disorders and Stroke, National Institutes of Health, *NINDS Arachnoiditis Information Page*, *What is Arachnoiditis?* (available at http://www.ninds.nih.gov/disorders/arachnoiditis/ arachnoiditis.htm) (last accessed January 24, 2011).

[4] The surgery and attendant recommendation for a cane post-date plaintiff's date last insured.

7

Such an inquiry is required when there is an apparent conflict between the expert's testimony and the *DOT*'s description of the requirements of the job. **Social Security Ruling** 00-4p, 2000 WL 1898704 at *2-*3 (SSA Dec. 4, 2000); **Haddock v. Apfel**, 196 F.3d 1084, 1091 (10th Cir. 1999). Plaintiff here perceives such a conflict in that the document preparer job suggested by the vocational expert as within plaintiff's residual functional capacity (Tr. 49-50) requires a "reasoning development level" of "3." Under the *DOT*, a reasoning level of 3 suggests that the job requires the ability to "[d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, Appendix C, § III, ¶ 03, **available at** http://www.occupationalinfo.org/appendxc_1.html#III (last accessed January 24, 2011). Plaintiff maintains that this definition is incompatible with the ALJ's determination that plaintiff has the residual functional capacity to understand and remember only simple instructions. The federal courts which have addressed this issue, including at least one court in this district, have found that a claimant who is limited to simple work "arguably lack[s] the mental [residual functional capacity] for jobs at or above [a reasoning level 2]." **Scheibeler v. Astrue**, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009) (Wiley, C.J.) (citing cases).

Nevertheless, although the ALJ did not question the vocational expert directly about any conflicts, the expert's testimony in response to the ALJ's hypothetical adding the limitation to simple instructions addresses that very issue:

> A: Well, I would eliminate the [two other jobs previously identified] because of the simple instructions, because they're doing a lot of variables there. It's still simple instructions, but the variability or orders I think could be a

> problem for them. *The document preparer I,* [sic] *would be no problem*. The charge account clerk I would eliminate because it has a language of three. . . .
>
> Q: Okay.
>
> A: So I would eliminate it.
>
> Q: So what we have left is document preparer.
>
> A: Right.

(Tr. 50 (emphasis added).) In other words, the vocational expert testified that a limitation to simple instructions would not eliminate the document preparer job.[5] Given this testimony, there was no conflict apparent on the record before the ALJ. Plaintiff's attorney at the hearing certainly noted none, and nothing in the record suggests that this was "an instance in which the alleged conflict was so 'obvious . . . that the ALJ should have picked up on [it] without any assistance.'" **Laughton v. Astrue**, 2009 WL 2372352 at *3 (D. Colo. July 30, 2009) (quoting **Overman v. Astrue**, 546 F.3d 456, 463 (7th Cir. 2008)). Accordingly, any error in failing to inquire specifically about a conflict undoubtedly was harmless, **Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988), and the ALJ was entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of his decision, **see Scheibeler**, 2009 WL 3077310 at *3. **See also Martin v. Commissioner of Social Security**, 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p [2000 WL 2989704 (SSA Dec. 4, 2000)] places an affirmative duty on the ALJ to conduct an independent investigation into the

---

[5] Moreover, "[b]ecause the *DOT* does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the *DOT*." **Zblewski v. Astrue**, 2008 WL 5206384 at *4 (7th Cir., 2008).

9

testimony of witnesses to determine if they are correct.").

Plaintiff next claims the ALJ erred by failing to properly weigh the opinion of his treating physician, Dr. Jennifer Smith.  In a one-page letter, Dr. Smith stated that plaintiff

> . . . has difficulty sitting or standing for more than thirty minutes due to pain.  He also cannot perform any repetitive or heavy lifting.  He cannot stoop or squat due to pain.  He takes medications for his pain that makes [sic] it difficult for him to concentrate.  Due to his limitations secondary to his ongoing back disease, I believe he is completely disabled.

(Tr. 367.)  The ALJ discredited this opinion as conclusory and unsupported by contemporaneous medical records or objective medical findings and instead constituted little more than a recitation of plaintiff's subjective complaints.[6]  Nevertheless, he noted that the restrictions suggested by Dr. Smith were not inconsistent with his ultimate conclusions regarding plaintiff's residual functional capacity.  (Tr. 23.)[7]  By contrast, the ALJ afforded "substantial weight" to the opinion of the state agency physician.  (Tr. 22, 325-330.)

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(d)(2); **see also Watkins v. Barnhart**, 350 F.3d 1297, 1300 (10th Cir. 2003).  A

---

[6] The fact that a medical source opinion relies on a patient's subjective complaints, in itself, does not provide sufficient reason to discredit that opinion, however.  "A medical opinion based on a physician's evaluation of the patient's medical history, observations of the patient, and an evaluation of the credibility of the patient's subjective complaints of pain, is medical evidence supporting a claim of disabling pain, even if objective test results do not fully substantiate the claim."  **Orender v. Barnhart**, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002) (citing **Nieto v. Heckler**, 750 F.2d 59, 61-62 (10th Cir. 1984)).

[7] The ALJ further noted, correctly, that Dr. Smith's conclusion that plaintiff was "disabled" was one reserved exclusively to the Commissioner and thus not entitled to any particular weight.  (Tr. 23.)  **See** 20 C.F.R. § 404.1527(e); **Sosa v. Barnhart**, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), **adopted**, 2003 WL 21428384 (D. Kan. Jun. 17, 2003).

10

treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  Even when a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972."  **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996).  *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[8]  Despite the deference usually afforded treating source opinions, however, they are not sacrosanct, and "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  **Social Security Ruling** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996).

Although plaintiff claims confusion as to what weight the ALJ gave Dr. Smith's opinion, it is clear that he gave it little, despite the simultaneously noting that the functional restrictions suggested therein were largely compatible with his residual functional capacity assessment.  Moreover, although plaintiff faults the ALJ for

---

[8] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2)-(6).

11

apparently failing to recognize that the records from Denver Health constitute Dr. Smith's contemporaneous treatment records,[9] he points to nothing specific therein to undermine the ALJ's residual functional capacity determination.[10] Nor does plaintiff refute the ALJ's observation that he sought no treatment at all for his back impairments between his third surgery in August, 2006, and his fourth, in January, 2008. (*See* Tr. 22.) Such a lack of treatment undermines the suggestion that an impairment is disabling. *See Huston v. Bowen*, 838 F.2d 1125, 1132 & n.7 (10th Cir. 1988); *Fessler v. Apfel*, 11 F.Supp.2d 1244, 1251-52 (D. Colo. 1998).

Relatedly, plaintiff claims it was error for the ALJ to rely on the opinion of the state agency physician because he did not have the benefit of Denver Health records submitted after the date of his opinion, because he did not consider plaintiff's fourth back surgery, and because the check-box form he completed cannot constitute substantial evidence. None of these arguments has merit. Although plaintiff submitted an additional 65 pages of records after the hearing in August, 2010 (Tr. 332-396), my own review reveals that nearly all are duplicative of the medical evidence already of record at the time the state agency physician rendered his opinion.[11] Moreover, plaintiff

---

[9] A fact that is not at all self-evident, since the treatment records reflect that Dr. Smith was only one of several different primary care physicians who coordinated plaintiff's care over the years.

[10] Indeed, in her letter, Dr. Smith refers to plaintiff as a patient of "Eastside Health Care Center" and makes no mention of any relationship that entity might have to Denver Health. (*See* Tr. 367.)

[11] With limited exceptions, in fact, the records are entirely identical. (*Compare* Tr. 285-286 *with* Tr. 332,-333, 340-341; *compare also* Tr. 289-305 *with* Tr. 334-347; Tr. 307 *with* Tr. 348; Tr. 309-310 *with* 351-352; Tr. 312-323 *with* 353-362 *and* 364-365.) The only truly new records submitted after the state agency physician rendered his opinion were those evidencing (1) receipt of a flu vaccination (Tr. 349); (2) treatment for complaints of a fungal infection of the toenails in October, 2004 (Tr. 363); (3) a visit in March, 2006, requesting a refill of pain medications (Tr. 371); and (4) treatment related to plaintiff's fourth surgery, which post-dated his date last insured (Tr. 372-388).

fails to specify how these records undermine the ALJ's determination in any way. Although plaintiff had not had his fourth and most recent back surgery at the time the state agency physician rendered his opinion, that surgery was performed in January, 2008, well after plaintiff's date last insured. *See* 20 C.F.R. § 404.131(b); ***Ivy v. Sullivan***, 898 F.2d 1045, 1048 (5th Cir. 1990); ***Ward v. Shalala***, 898 F.Supp. 261, 263 (D. Del. 1995).[12] Lastly, although the state agency physician used a form including a check-box format to set forth his opinion, he made specific reference therein to the objective medical findings supporting his conclusions. (Tr. 325-330.) The mere use of such a form itself is not problematic given such supporting narrative. ***Cf. Hamlin v. Barnhart***, 365 F.3d 1208, 1223 (10th Cir. 2004) (noting that state agency physician "provided no narrative explanation for any of the conclusions reached" and therefore that the opinion did not constitute substantial evidence). Accordingly, the ALJ did not err in relying on this opinion. *See* **Social Security Ruling** 96-6p, 1996 WL 374180 at *3.

Finally, plaintiff argues that the ALJ improperly discredited his subjective complaints of pain and functional limitation. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." ***White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) (quoting ***Kepler v. Chater***, 68 F.3d 387, 390-91 (10th Cir. 1995)). The ALJ gave clear, specific, and

---

[12] Although medical evidence outside this period may be considered to the extent it sheds light on the nature and severity of plaintiff's condition during the relevant time period, ***see Hamlin v. Barnhart***, 365 F.3d 1208, 1215 (10th Cir. 2004), the fact that plaintiff sought no treatment of any kind between his third and fourth back surgeries tends to support rather than refute the state agency doctor's opinion in any event.

legitimate reasons why he did not find plaintiff's testimony entirely credible, all of which were appropriately considered and substantiated by the evidence of record. (Tr. 22-24.)[13] Reversal therefore is not warranted.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 26, 2011, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

---

[13] In particular, plaintiff's argument that the ALJ failed to follow the requirements of **Luna v. Bowen**, 834 F.2d 161 (10th Cir.1987), is specifically belied by the record (*see* Tr. 21-24).